**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

|  |  |
|---|---|
| | * |
| **K.I.,** | |
| | * |
| **Plaintiff,** | * |
| | |
| **v.** | * |
| | **Civil No. 1:23-2383-JRR** |
| **BHARAT TYAGI a/k/a ROCKY SINGH,** | |
| | * |
| **Defendant.** | |
| | * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## <u>REPORT AND RECOMMENDATION</u>

This Report and Recommendation addresses K.I.'s ("Plaintiff's") Motion for Default Judgment pursuant to Federal Rule of Civil Procedure 55(b)(2) ("Plaintiff's Motion"). *See* ECFs 17, 30. On February 1, 2024, in accordance with 28 U.S.C. § 636 and Local Rules 301 and 302, Judge Rubin referred Plaintiff's Motion to the undersigned for the purpose of "[r]eviewing a default judgment and/or making recommendations concerning damages." ECF 33. I reviewed the relevant filings and conducted an evidentiary hearing. *See* ECF 39. For the reasons stated herein, the undersigned recommends GRANTING in part and DENYING in part Plaintiff's Motion. As explained below, I recommend entering judgment against Defendant Bharat Tyagi a/k/a Rocky Singh ("Defendant") in the amounts of $150,000 in liquidated damages and $150,000 in punitive damages.

## I.    FACTUAL BACKGROUND[1]

Plaintiff and Defendant first met on December 31, 2021.  Compl. at ¶ 13, ECF 1.
Thereafter, Plaintiff and Defendant began dating.  According to Plaintiff, Defendant misled her in
several ways during their initial encounter, including providing a false name, lying about his age,
and claiming that he owned multiple businesses.  *Id.* at ¶ 14.  Despite this, Defendant moved in
with Plaintiff, and their relationship continued "without issue" until May 29, 2022.  *Id* at ¶ 16-17.
On that date, according to Plaintiff, Defendant attacked her, "leaving her with a black eye."  *Id.* at
¶ 1.  After this incident, Plaintiff obtained a restraining order against Defendant.  *Id.* at ¶ 18.
Defendant also faced criminal assault charges, which later dropped after Defendant "threaten[ed]
to ruin Plaintiff's professional and familial relationships if she cooperated" with the authorities.
*Id.* at ¶ 19.  Defendant also threatened to share intimate videos and images of Plaintiff online.  ECF
17, at ¶ 8.  Because of his threats, Plaintiff "decided to stop all communication with Defendant" in
December of 2022.  *Id.*; Compl. at ¶ 21.  At the hearing on the Motion, Plaintiff testified that,
before ending communications with Defendant, she never expressly consented to Defendant
sharing intimate videos and images of her online.  *See also* Compl. at ¶¶ 72, 78, 84, 90, 96, 102,
108, 114, 120, 126, 132, 138, 144, 150, 156, 162, 168, 174, 180, 186, 192, 198, 204, 210, 216,
222, 228, 234, 240, 246, 252, 257, 266.

Between February 22, 2023, and February 23, 2023, Defendant uploaded thirty-one (31)
sexually explicit videos and images of Plaintiff, captured by Defendant during their relationship,
on his public WhatsApp feed.[2]  *Id.* at ¶ 26; *see id.* at ¶¶ 27-32, 34, 36-41, 44-47, 49-51, 54-62, 64-

---

[1] In considering Plaintiff's Motion, the undersigned accepts as true all well-pleaded facts in the
complaint except those concerning damages.  *Ryan v. Homecomings Fin. Network*, 253 F.3d 778,
780 (4th Cir. 2001); Fed. R. Civ. P. 8(b)(6).

[2] To support her assertion that the WhatsApp account is Defendant's, Plaintiff explains that
Defendant "previously used [it] to interact and communicate with [her, t]he account is in the name

65 (describing, in detail, the content of the sexually explicit videos and images).  Plaintiff testified that she learned from Defendant's former spouse that Defendant uploaded the videos and images. According to Plaintiff, the videos and images were "publicly viewable or, at a minimum, viewable to those who have Defendant in their contact list or with whom Defendant had previously communicated using WhatsApp." *Id.* at ¶ 68.  At the hearing on the Motion, Plaintiff testified that the videos and images remained on Defendant's public WhatsApp feed for at least three (3) days. Plaintiff also explained how Defendant's actions caused her severe emotional distress.  She testified that, after public disclosure of the videos and images, she saw a psychiatrist more often and received prescriptions for anti-depressants.  Plaintiff spoke about feeling humiliated by the idea that the videos and images were available to the public.  Plaintiff further noted her concern at the time that the videos and images would tarnish her reputation.

A week after public disclosure of the videos and images, Defendant called hospitals "in New York to falsely report that [Plaintiff] was diverting drugs in [her] capacity as a Certified Registered Nurse Anesthetist[.]"  ECF 17, at ¶ 9.  Plaintiff testified that he called her supervisors to accuse her of stealing anesthetics.  Defendant also filed false complaints about Plaintiff with the New York State licensing board.  *Id.*  These actions resulted in her losing a potential contract at a hospital, being placed on suspension—then terminated—by one hospital-employer ("Hospital #1"), being subject to investigations conducted by Hospital #1 and the New York State licensing board, and experiencing difficulty with finding a new job at other New York hospitals.  *Id.*; Compl. at ¶¶ 4, 24-25.

Plaintiff's testimony at the evidentiary hearing expanded on these post-publication

---

'Bharat Tyagi', and [the account] is associated with [his] phone number[.]"  Compl. at ¶ 67. Additionally, where her face is not visible, Plaintiff asserts that she is in fact depicted in the videos and images because of "the context of the videos, along with her identifying tattoos[.]"  *Id.* at ¶ 69.

allegations as well.  She explained that her former supervisor at Hospital #1 informed her about Defendant's call and accusations.  Defendant knew about Plaintiff's employment at Hospital #1 because he traveled with her to work and knew employment-related facts, such as her schedule and badge number.  She asserted that Defendant would send this and other information to her via text message, as another means of attempting to intimidate her.  Plaintiff explained that she purchased a house in 2021 but had to sell the same because Defendant's actions and their impact on her job forced her to move to a different county so that she could work for a different medical provider ("Hospital #2").  Defendant called Plaintiff's supervisor at Hospital #2, but Plaintiff had already warned her supervisor that he may call and accuse her of wrongdoing.  Hospital #2 did not take his assertions seriously, as they already had a copy of a restraining order she sought against him.  Plaintiff noted that she filed a wrongful termination suit against Hospital #1 (which is ongoing) and incurred attorney's fees in relation to that case and related investigations.  Plaintiff testified that she now works as a Certified Registered Nurse Anesthetist in Maryland, and that she chose to relocate and accept a job in Maryland for personal reasons not attributable to Defendant's actions.  That is, while her move from one New York-based hospital to another New York-based hospital was due to ramifications of Defendant's conduct, her move to Maryland was not.

## II.    PROCEDURAL HISTORY

On March 1, 2023, Plaintiff, through counsel, filed a civil complaint against Defendant in the United States District Court for the Southern District of New York.  *See generally* Compl., ECF 1.  The Complaint alleged thirty-six causes of action based on 15 U.S.C. § 6851, New York Civil Rights Law § 52-b, New York City Administrative Code § 10-180, intentional infliction of emotional distress ("IIED"), tortious interference with business relations, and tortious interference with contract.  *Id.* at ¶ 70-288.  Personal service of the Complaint and summons on Defendant

occurred on March 22, 2023. ECF 8. On April 18, 2023, in response to Plaintiff's request, the clerk of the Southern District of New York entered a Certificate of Default against Defendant. ECFs 11-12. On June 16, 2023, Plaintiff, through counsel, moved for default judgment. ECFs 16-18. Plaintiff first requested at least $150,000 in damages under 15 U.S.C. § 6851 plus additional damages for emotional distress, between $300,000 and $500,000. ECF 17, at ¶ 19. Plaintiff sought $300,000 in damages for emotional distress and punitive damages under N.Y. Civ. Rights Law § 52-b, N.Y.C. Admin. Code § 10-180, and the state law IIED claim. *Id.* at ¶ 20. Plaintiff sought at least $500,000 in lost profits for tortious interference with business relations and tortious interference with contract. *Id.* at ¶ 21. Plaintiff's demand also included attorney's fees and costs and expenses incurred because of this case. *Id.* at ¶ 22.

On August 2, 2023, in response to the district judge's July 26, 2023 order, Plaintiff submitted a letter addressing the basis for the Southern District of New York's personal jurisdiction over Defendant. ECFs 20-21. On August 23, 2023, the court concluded that the Southern District of New York lacked personal jurisdiction over Defendant, observing that "[i]t is likely that the alleged underlying events occurred in the District of Maryland, where Defendant resides[,]" and directed the clerk to transfer this case to this Court. ECFs 21-22.

Transfer to this Court occurred on August 31, 2023. ECF 23. On October 5, 2023, Judge Hollander ordered Plaintiff's counsel to notify the Court, in writing, whether he would seek admission to the Court, or whether Plaintiff would proceed *pro se*. ECF 25. On November 20, 2023, after Plaintiff's counsel failed to respond to the October 5, 2023 order, Judge Hollander issued a thirty-day stay to allow Plaintiff time to obtain new counsel. ECF 28. On January 17, 2024, Plaintiff informed the Court that she would proceed *pro se* and moved for default judgment against Defendant. ECF 30. In contrast to her June 16, 2023 motion, Plaintiff sought only

$150,000 in liquidated damages under 15 U.S.C. § 6851, $150,000 in punitive damages, and attorney's fees. *Id*. On February 9, 2024, the Clerk of the Court entered an Order of Default against Defendant and issued a Notice of Default to Defendant. ECFs 34-35.

The Court ordered that an evidentiary hearing occur, issuing notice to both parties. ECFs 36-38. The Court directed Plaintiff and "[a]ny party in attendance [to] be prepared to support their claims regarding liability and damages . . . [by] presenting any documents, testimony, or other evidence[.]" ECFs 36-38. On August 15, 2024, the Court held the evidentiary hearing, where only Plaintiff appeared. ECF 39. She testified consistent with her allegations and provided additional information, including what has been noted above. With respect to her demand for relief, Plaintiff expressed her desire to seek compensatory, punitive, and fee-related damages in addition to liquidated damages under federal law.

After the evidentiary hearing, the Court, by paperless order, directed Plaintiff "to submit any evidentiary documentation further supporting her request for damages and attorney's fees[, including] . . . proof of emotional distress, lost employment, lost wages and/or profits, fees for attorney and court costs, and any other basis for damages requested[.]" ECF 40. On October 25, 2024, to support her request for lost wages, Plaintiff submitted a letter directly to chambers from her current Maryland employer.

## III.    LEGAL STANDARD

Courts may enter default against a defendant who "has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise[.]" Fed. R. Civ. P. 55(a). Once default is entered, and the claim is not for a sum certain or ascertainable through computation, the moving party "must apply to the court for a default judgment." *Id.* at 55(b)(2). The Fourth Circuit has a "strong policy" that "cases be decided on their merits[.]" *United States v. Shaffer Equip. Co.*, 11

F.3d 450, 453 (4th Cir. 1993).  However, "default judgment may be appropriate when the adversary process has been halted because of an essentially unresponsive party."  *SEC v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005).

In reviewing a motion for default judgment, as to establishing liability, courts accept as true the well-pleaded factual allegations in the complaint.  *Ryan*, 253 F.3d at 780-81; Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."); *see generally Dominion Fin. Servs., LLC v. Pavlovsky*, 673 F. Supp. 3d 727, 740 (D. Md. 2023) ("In the Fourth Circuit, district courts analyzing default judgments have applied the standard of plausibility pleading articulated by . . . *Ashcroft v. Iqbal*, 556 U.S. 662 . . . (2009)[] and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 . . . (2007)[] to determine whether allegations within the complaint are well-pleaded.") (internal quotation marks and citation omitted).  Courts must then determine whether the well-pleaded factual allegations in the complaint constitute a legitimate cause of action and "support the relief sought[.]"  *Ryan*, 253 F.3d at 780-81.

In ascertaining damages, courts must make an independent determination.  *See* Fed. R. Civ. P. 8(b)(6); *Lawbaugh*, 359 F. Supp. 2d at 422 ("Upon default, the well-pled allegations in a complaint as to liability are taken as true, although the allegations as to damages are not.").  The moving party must provide sufficient factual and legal support for its request for damages and, if appropriate, attorney's fees.  *See Adkins v. Teseo*, 180 F. Supp. 2d 15, 17 (D.D.C. 2001) (noting that, except where the amount of damages is certain, courts addressing default judgments shall make an independent determination of damages and may rely on detailed affidavits or documentary evidence to determine the appropriate sum).  If necessary, courts may hold a hearing to "(A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of

any allegation by evidence; or (D) investigate any other matter."  Fed. R. Civ. P. 55(b)(2); *see also*

*Monge v. Portofino Ristorante*, 751 F. Supp. 2d 789, 795 (D. Md. 2010) ("Court[s] may only award

damages without a hearing if the record supports the damages requested.").  However, courts must

limit their award of damages to that which is requested by the plaintiff.  *See* Fed. R. Civ. P. 54(c)

("A default judgment must not differ in kind from, or exceed in amount, what is demanded in the

pleadings.").

## IV.    ANALYSIS

For the following reasons, the undersigned recommends GRANTING in part and

DENYING in part Plaintiff's Motion.  The undersigned recommends GRANTING Plaintiff's

requests for $150,000 in liquidated damages under 15 U.S.C. § 6851 and $150,000 in punitive

damages under state law.  However, the undersigned recommends DENYING Plaintiff's request

for attorney's fees.[3]

The relevant conduct falls within the scope of what has become known as "revenge porn."

*See Doe v. Crawford*, 702 F. Supp. 3d 509, 511 (S.D. Miss. 2023) (using this term to describe

"image-based sexual abuse," such as the defendant's unlawful transmission of an intimate image

of the plaintiff to another person, relevant to § 6851 claims) (citation omitted); *Eckhart v. Fox

News Network, LLC*, No. 20-5593, 2022 WL 4579121, at *1 (S.D.N.Y. Sept. 29, 2022) (referring

to N.Y. Civ. Rights Law § 52-b as "the state's so-called 'Revenge Porn' statute"); *Waterbury v.

N.Y.C. Ballet, Inc.*, 168 N.Y.S.3d 417, 426 n.6 (N.Y. App. Div. 2022) (noting how the "pernicious

issue" of revenge porn and other "[d]igital harassment" informed the passage of N.Y.C. Admin.

Code § 10-180).  "Although revenge porn is nothing new, the federal law prohibiting it is."

---

[3] Plaintiff confirmed at the evidentiary hearing that she wished to pursue the remedies requested
in her January 17, 2024, letter, rather than the broader request in her 2023 filings.

*Crawford*, 702 F. Supp. 3d at 511.  Nearly all states, however, passed laws against revenge porn by the time the federal law took effect in 2022.  *See United States v. Little*, No. 21-162, 2022 WL 16714140, at *4 n.5 (N.D. Okla. Nov. 4, 2022) (noting that all but four states criminalized revenge porn at the time of the opinion).  The rise in legislative action recognizes the potential for far-reaching and long-lasting effects on victims' relationships, mental health, employment, and physical and emotional safety, not to mention the effects of shame or humiliation that can be difficult to escape or limit.  *See Doe v. Constant*, No. 24-254, 2024 WL 3512136, at *4 (W.D. La. July 23, 2024) (citing Danielle K. Citron & Mary Anne Franks, *Criminalizing Revenge Porn*, 49 Wake Forest L. Rev. 345 (2014)).  The claims and assertions here reflect those realities, as do the Court's conclusions on the appropriate relief.

These conclusions, explained in greater detail below, rely on the unanswered allegations as well as Plaintiff's testimony under oath at the evidentiary hearing.  As a general matter, the Court found her testimony credible.  She did not testify inconsistent with her allegations.  In response to the Court's inquiries, she clarified her answers in a credible manner, acknowledging what was provable and what was, at least from her perspective, causally related to her claims, rather than using the uncontested nature of the hearing to make incredible leaps and test the limits of unsupportable inferences.  For those reasons, unless otherwise noted, the Court credits her testimony in making the findings below.

> **A.** *The Undersigned recommends GRANTING Plaintiff's request for $150,000 in liquidated damages under 15 U.S.C. § 6851.*

Plaintiff seeks  $150,000 in liquidated damages under 15 U.S.C. § 6851.  ECF 30.  Plaintiff maintains that Defendant's actions violate § 6851 and entitle her to liquidated damages under the statute.  *Id.*; Compl. at ¶ 70-255.  To determine whether Plaintiff is entitled to liquidated damages, I must decide whether Defendant's actions trigger liability under § 6851.

As part of the Violence Against Women Act Reauthorization Act of 2022, Congress provided a civil action for the non-consensual disclosure of an individual's "intimate visual depictions." The statute provides that:

> an individual whose intimate visual depiction is disclosed, in or affecting interstate or foreign commerce or using any means or facility of interstate or foreign commerce, without the consent of the individual, where such disclosure was made by a person who knows that, or recklessly disregards whether, the individual has not consented to such disclosure, may bring a civil action against that person in an appropriate district court of the United States for relief as set forth in paragraph (3).

15 U.S.C. § 6851(b)(1)(A).

Based on the allegations, Plaintiff's testimony, and the statutory language, I recommend finding that Defendant violated § 6851 because Plaintiff sufficiently establishes that Defendant disclosed intimate visual depictions of her "in . . . interstate . . . commerce." *Id.* First, Plaintiff demonstrates that the conduct involved an "intimate visual depiction." Congress defines this as any photo, video, or other visual image, *see* 18 U.S.C. § 2256(5), that depicts (1) the uncovered genitals, pubic area, anus, or post-pubescent female nipple of an identifiable individual or (2) the display or transfer of bodily sexual fluids on to any part of the body of an identifiable individual or of an identifiable individual engaging in sexually explicit conduct, 15 U.S.C. § 6851(a)(5). "Sexually explicit conduct" includes "sexual intercourse, including genital-genital[ and] oral-genital," and "actual or . . . graphic . . . lascivious exhibition of the anus, genitals, or pubic area of any person." 18 U.S.C. § 2256(2)(A)-(B); *see* 15 U.S.C. § 6851(a)(6). Plaintiff alleges that Defendant uploaded thirty-one sexually explicit videos and images of her on his public WhatsApp feed. Compl. at ¶ 26. According to Plaintiff, at least twenty-five (25) of the thirty-one videos and images depicted her uncovered genitals, anus, or nipple. *Id.* at ¶¶ 27-28, 30-32, 34, 36-39, 41, 44-46, 49-51, 56-61, 64-65. Several of the videos and images show Plaintiff's face and tattoo, making her identifiable to the Court of the depicted conduct. *Id.* at ¶ 29-31, 36, 38, 40-41, 44-46, 50-51,

54, 61.

Second, Plaintiff demonstrates that Defendant's conduct involved a disclosure in interstate commerce. "Disclose" means "to transfer, publish, distribute, or make accessible[,]" 15 U.S.C. § 6851(a)(4), and the disclosure must be "in or affecting interstate or foreign commerce or using any means or facility of interstate or foreign commerce," *id.* at § 6851(b)(1)(A). There can be little doubt that the internet—through which WhatsApp operates and connects users—is a facility of interstate or foreign commerce. *See, e.g.*, *United States v. Roof*, 10 F.4th 314, 385 (4th Cir. 2021) (explaining that "the internet . . . is [] rightly viewed as a channel of interstate commerce," such that it lies within Congress' regulatory power under the Commerce Clause). Therefore, uploading videos or images online is a disclosure in interstate commerce. *See Doe v. Sultan*, No. 23-00667-FDW-DCK, 2023 WL 7027976, at *2 (W.D.N.C. Oct. 25, 2023) (finding that an intimate video posted on Facebook violated § 6851); *S.S. v. Collins*, No. 23-0892, 2024 WL 3594350, at *5 (D.N.J. July 31, 2024) (finding that an intimate image posted on Craigslist "constitute[d] transportation in interstate commerce"); *McCann v. McCann*, No. 23-0028, 2023 WL 4934115, at *1 (D. Utah Aug. 2, 2023) (finding a violation of § 6851 based on an intimate image posted online).

Third, "consent" requires "an affirmative, conscious, and voluntary authorization made by the individual free from force, fraud, misrepresentation, or coercion." 15 U.S.C § 6851(a)(2). Plaintiff establishes that Defendant knew that Plaintiff did not consent to him uploading the videos and images. Plaintiff testified that she never consented to Defendant posting intimate videos and images of her online. She also alleges that she ceased all communication with him after he threatened to share intimate videos and images of her online. Compl. at ¶ 21; ECF 17, at ¶ 8. Read together, her allegations and testimony depict Defendant's knowing threats to do something against her desires, namely, to embarrass or otherwise harm her by violating her privacy. Nothing

about these circumstances warrant even the slightest inference of consent. These actions appear well within the scope of conduct Congress intended to address.

Where a plaintiff establishes a § 6851 violation, courts may award "liquidated damages in the amount of $150,000[] and . . . reasonable attorney's fees[.]" 15 U.S.C § 6851(3)(A). Because Defendant's actions violated § 6851, Plaintiff is entitled to the liquidated damage award under this provision (as well as attorney's fees, which is addressed below). Therefore, I recommend GRANTING Plaintiff's request for $150,000 in liquidated damages.

    **B.** *The Undersigned recommends GRANTING IN PART Plaintiff's Motion seeking relief under various New York state laws and awarding $150,000 in punitive damages.*

Plaintiff asserts several causes of action under state statutory and common law and seeks punitive damages and attorney's fees. Compl. at ¶ 256-288; ECF 30. She invokes N.Y. Civ. Rights Law § 52-b, N.Y.C. Admin. Code § 10-180, and common law IIED, each of which may entitle her to such punitive damages and fees. *Ibid.* To determine whether Plaintiff is entitled to punitive damages in this transfer action, I employ a three-step process. First, before reaching the merits of Plaintiff's Motion, I must engage in a choice of law analysis to decide whether N.Y. Civ. Rights Law § 52-b and N.Y.C. Admin. Code § 10-180 apply and whether New York or Maryland law governs Plaintiff's common law claims and requests for punitive damages and attorney's fees. Regarding the common law tort claims, Plaintiff, acting *pro se*, does not identify which state law— New York or Maryland—governs her claims and demands for punitive damages and attorney's fees. Second, after resolving the choice of law issue, I must decide whether Defendant's actions violate the statutory, if applicable, and state tort laws. Third, I must evaluate whether Plaintiff's request for punitive damages is excessive and request for attorney's fees is supported.

For the following reasons, I recommend finding that (1) New York statutory and common law applies in this case, (2) Defendant's actions violated § 52-b and § 10-180 and satisfy the

elements of IIED, (3) that Plaintiff's request for punitive damages is not excessive, and (4) that an attorney's fees award is inappropriate due to insufficient support.  Because Plaintiff no longer pursues relief under tortious interference theories, my analysis below excludes those claims.[4]

        *i. The choice of law analysis in this transfer action requires application of New York law to the state law claims.*

Federal district courts sitting in diversity apply federal procedural law and the substantive law of the state in which it sits.  *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78-79 (1938); *Gasperini v. Ctr. for Humans., Inc.*, 518 U.S. 415, 427 (1996).  However, when cases are transferred from another federal court under 28 U.S.C. § 1404(a) *sua sponte*, the transferee court applies the law of the state in which the transferor court is located.  *Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964); *see Ferens v. John Deere Co.*, 494 U.S. 516, 531 (1990) ("[T]he transferor law should apply

---

[4] The Complaint asserts claims for tortious interference with business relations and tortious interference with contract.  Compl. at ¶ 280-88.  I do not recommend awarding such relief for two reasons.  First, Plaintiff's January 2024 letter excludes tortious interference damages in her demand.  Second, granting substantial latitude to Plaintiff because she is acting *pro se* and assessing the record regardless, the evidence before the Court does not establish tortious interference damages.  At the evidentiary hearing, Plaintiff spoke to several consequences of Defendant's conduct, including changes in her employment.  Mindful of Plaintiff's *pro se* status, the Court advised her that she could submit documentation within ten days to demonstrate damages, to include attorney's fees and costs, lost income, and other documentation reflecting monetary impact on her, if she wanted such information to be considered.  *See* ECF 40 (providing time post-hearing to submit documentary evidence of damages).  After more than two months, she submitted a document from her current employer noting her current wages.  This is insufficient to establish that she is entitled to lost wages or other compensatory relief.  Plaintiff testified that she relocated and accepted a new job in Maryland for personal reasons not attributable to Defendant's actions.  The Court understood the facts—both alleged and testified—to be that she may have suffered a reduction in hourly wages when going from one New York-based hospital to another.  Although she alleged and testified that she was paid more at her former employer in New York, the evidence does not reflect the difference in wages received in the New York jobs.  Therefore, the wage information about Plaintiff's Maryland employment is irrelevant to the tortious interference claims.  *See Total Recon Auto Ctr., LLC v. Allstate Ins. Co.*, No. DLB-23-672, 2023 WL 8545228, at *2, *5 (D. Md. Dec. 11, 2023) (requiring that the plaintiff show damage resulting from the defendant's interference with a possible future business relationship or an existing contract with a third party).

regardless of who makes the § 1404(a) motion."); *see also Ziemkiewicz v. R+L Carriers, Inc.*, 996 F. Supp. 2d 378, 403 (D. Md. 2014) (applying New Jersey law after the United States District Court for the District of New Jersey transferred the case to the Court under § 1404(a) *sua sponte*). State statutes, including those that allow for recovery of attorney's fees and punitive damages, are substantive laws. *See Erie*, 304 U.S. at 78 ("[T]he law to be applied in any case is the law of the state[, including] . . . law . . . declared by its Legislature in a statute[.]"); *Adelson v. Harris*, 774 F.3d 803, 809 (2d Cir. 2014) (finding that a Nevada statute allowing for recovery of attorney's fees was "substantive within the meaning of *Erie*"); *Sparrow Fund Mgmt. LP v. MiMedx Grp., Inc.*, No. 18-4921-PGG-KHP, 2021 WL 12101061, at *6 (S.D.N.Y. Sept. 28, 2021) (citing *Buchwald v. Renco Grp.*, 539 B.R. 31, 53 (S.D.N.Y. 2015)) ("[S]tate laws . . . allowing for recovery of punitive damages are substantive laws[.]"). Here, Plaintiff filed this case in the Southern District of New York, which transferred the matter to this Court under § 1404(a) *sua sponte*. Therefore, as the transferee court, I recommend applying N.Y. Civ. Rights Law § 52-b and N.Y.C. Admin. Code § 10-180.

Proceeding to Plaintiff's IIED claim and requests for punitive damages and attorney's fees, as part of the *Erie* doctrine, courts must also apply the transferee court's choice of law rules to the substantive laws at issue. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). In tort cases, New York choice of law rules apply an interest-analysis approach.[5] In other words, "[t]he law of the jurisdiction having the greatest interest in the litigation will be applied[.]" *Schultz v. Boy Scouts of Am., Inc.*, 480 N.E.2d 679, 684 (N.Y. 1985). The interest-analysis approach "is

---

[5] Interest analysis is a "flexible approach intended to give controlling effect to the law of the jurisdiction which, because of its relationship or contact with the occurrence or the parties, has the greatest concern with the specific issue raised in the litigation." *Cooney v. Osgood Mach., Inc.*, 612 N.E.2d 277, 280 (N.Y. 1993).

generally [applied] separately for each claim[.]" *2002 Lawrence R. Buchalter Alaska Tr. v. Phila. Fin. Life Assur. Co.*, 96 F. Supp. 3d 182, 200 (S.D.N.Y. 2015). Before applying the interest-analysis approach, "the first step in any case presenting a potential choice of law issue is to determine whether there is an actual conflict between the laws of the jurisdictions involved." *GlobalNet Financial.com, Inc. v. Frank Crystal & Co., Inc.*, 449 F.3d 377, 382 (2d Cir. 2006). "An actual conflict . . . arises where there are 'relevant substantive differences [between the laws] that could have a significant impact on the outcome of the case.'" *Youngman v. Robert Bosch LLC*, 923 F. Supp. 2d 411, 416 (E.D.N.Y. 2013) (quoting *Fin. One Pub. Co. Ltd. v. Lehman Bros. Special Fin., Inc.*, 414 F.3d 325, 332 (2d Cir. 2005)). If an actual conflict does not exist, then an interest analysis "is unnecessary[,] and New York law will apply." *First Hill Partners, LLC v. BlueCrest Cap. Mgmt. Ltd.*, 52 F. Supp. 3d 625, 633 (S.D.N.Y. 2014). I recommend applying New York law to Plaintiff's IIED claim and requests for punitive damages and attorney's fees because actual conflict does not exist between the New York and Maryland laws for IIED, punitive damages, or attorney's fees. Therefore, an interest analysis is unnecessary, and New York law should apply to all three issues.

>    a.   *There is no actual conflict between New York and Maryland's IIED causes of action.*

Under New York law, to prove IIED, a plaintiff must allege: "(1) extreme and outrageous conduct, measured by the reasonable bounds of decency tolerated by society; (2) intent to cause or disregard of a substantial probability of causing severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress." *Margrabe v. Sexter & Warmflash, P.C.*, 353 F. App'x 547, 550 (2d Cir. 2009). The extreme and outrageous conduct must "be regarded as atrocious and intolerable in a civilized society." *Freihofer v. Hearst Corp.*, 480 N.E.2d 349, 355 (N.Y. 1985); *accord Lish v. Harper's Mag. Found.*, 807 F. Supp. 1090, 1109

(S.D.N.Y. 1992).  "New York sets a high threshold for conduct that is extreme and outrageous enough to constitute IIED."  *Margrabe*, 353 F. App'x at 550.  Similarly, under Maryland law, to prove IIED, "a plaintiff must allege: (1) conduct that is intentional or reckless; (2) conduct that is extreme and outrageous; (3) a causal connection between the wrongful conduct and the emotional distress; and (4) emotional distress that is severe."  *Lilly v. Balt. Police Dep't*, 694 F. Supp. 3d 569, 596 (D. Md. 2023).  I find no relevant substantive differences between New York and Maryland law on this theory.

> **b.  There is no actual conflict between New York and Maryland law on punitive damages.**

Under New York law, in tort cases, a plaintiff may be entitled to an award of punitive damages if they "demonstrate the existence of circumstances of [(1)] aggravation or outrage, such as spite or malice, [(2)] a fraudulent or evil motive on the part of the defendant, or [(3)] such a conscious and deliberate disregard of the interests of others that the conduct may be called wil[l]ful or wanton."  *Carvel Corp. v. Noonan*, 350 F.3d 6, 24 (2d Cir. 2003) (internal citation omitted). Under Maryland law, in tort cases, a plaintiff may be entitled to an award of punitive damages "upon a showing of actual malice."  *Robles v. Prince George's Cnty., Md.*, 302 F.3d 262, 273 (4th Cir. 2002) (citing *Bowden v. Caldor, Inc.*, 710 A.2d 267, 276 (Md. 1998)).  Actual malice in Maryland requires "[(1)] a sense of conscious and deliberate wrongdoing, [(2)] evil or wrongful motive, [(3)] intent to injure, [(4)] ill will, or [(5)] fraud."  *Id.*

Neither New York nor Maryland enforces a cap on the punitive damages a court may award.  *Deutsch v. Novartis Pharms. Corp.*, 723 F. Supp. 2d 521, 524 (E.D.N.Y. 2010); *Ziemkiewicz*, 996 F. Supp. 2d at 403 (citing *Bowden*, 710 A.2d at 288).  Also, in both jurisdictions, a plaintiff is not entitled to punitive damages unless there is a valid claim for compensatory damages.  *Excelsior Cap. LLC v. Allen*, 536 F. App'x 58, 60 (2d Cir. 2013); *Warnick v. Delmarva*

*Power & Light Co.*, No. RDB-23-0175, 2023 WL 7282950, at *4 (D. Md. Nov. 3, 2023) (citing *Shabazz v. Bob Evans Farms, Inc.*, 881 A.2d 1212, 1233-34 (Md. App. Ct. 2005)).  I again find no relevant substantive differences between New York and Maryland law.  In either state, Plaintiff must generally make a similar showing to entitle herself to punitive damages and is not restricted by a cap on such damages.

> c. *There is no actual conflict between New York and Maryland law on attorney's fees.*

Under New York and Maryland law, a prevailing party is not entitled to an award of attorney's fees unless authorized by statute.  *Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 199 (2d Cir. 2020); *Imgarten v. Bellboy Corp.*, 383 F. Supp. 2d 825, 834 (D. Md. 2005).  Both states also require that a prevailing party submit adequate documentation to support their request for attorney's fees.  *See N.Y. State Ass'n for Retarded Child., Inc. v. Carey*, 711 F.2d 1136, 1154 (2d Cir. 1983) ("All applications for attorney's fees . . . [must] be . . . accompanied by contemporaneous time records indicating, for each attorney, the date, the hours expended, and the nature of the work done."); *Matias Guerra v. Teixeira*, No. TDC-16-0618, 2019 WL 3927323, at *2 (D. Md. Aug. 20, 2019) (The party requesting attorney's fees "must provide 'detailed records' that specify 'the services performed, by whom they were performed, the time expended thereon, and the hourly rate charged.'" (quoting *Bel Air Plaza Ltd. P'ship v. Ross Dress for Less, Inc.*, No. CCB-14-2533, 2016 WL 3440191, at *1 (D. Md. June 23, 2016))).  To be entitled to an award of attorney's fees in either state, Plaintiff must be authorized by statute and submit similar documentation to support her request.  I again find no conflict.

> ii. *The undersigned recommends finding that Plaintiff demonstrates liability under the relevant New York state statutes and common law IIED cause of action, and that punitive damages are appropriate.*

For many of the same reasons stated above, *supra* Section IV.A, I recommend finding

Defendant liable under the relevant state causes of action. The state statutes overlap with 15 U.S.C. § 6851 in their aim to capture "revenge porn," including their use of similar elements for a violation. Therefore, the liability findings under federal law apply equally to the state and local statutes. Given the intentional and outrageous nature necessary to trigger statutory liability, the uncontested allegations and evidence also establish liability under the common law tort of IIED and provide a basis for punitive damages.

> ### a. The undersigned recommends finding that Defendant's actions constitute a violation of New York Civil Rights Law § 52-b.

Plaintiff asserts that she is entitled to punitive damages under N.Y. Civ. Rights Law § 52-b, ECF 17, at ¶ 20, which provides that:

> [a]ny person depicted in a still or video image, including an image created or altered by digitization, regardless of whether or not the original still or video image was consensually obtained, shall have a cause of action against an individual who, for the purpose of harassing, annoying or alarming such person, disseminated or published, or threatened to disseminate or publish, such still or video image, where such image: a. was taken when such person had a reasonable expectation that the image would remain private; and b. depicts (i) an unclothed or exposed part of such person; or (ii) such person engaging in sexual conduct, as defined in subdivision ten of section 130.00 of the penal law, with another person; and c. was disseminated or published, or threatened to be disseminated or published, without the consent of such person.

N.Y. Civ. Rights Law § 52-b(1). "Sexual conduct" includes:

> [(1)] any penetration, however slight[,] . . . [(2)] conduct between persons consisting of contact between [(a)] the penis and the vagina or vulva[,] . . . [(b)] the mouth and the penis, the mouth and the anus, or the mouth and the vulva or vagina[, or] . . . [(c)] the penis and anus[, and] . . . [(3)] the emission of ejaculate by the actor upon any part of the victim, clothed or unclothed.

*Id.* at § 52-b(1)(b)(ii) (citing N.Y. Penal Law § 130.00(1)-(3)). Where a plaintiff satisfies the elements of this claim, courts may award "punitive damages, compensatory damages[,] . . . and attorney's fees." *Id.* at § 52-b(2).

For the same reasons identified earlier, the undersigned recommends finding that

Defendant's actions violate § 52-b.  Plaintiff's unanswered allegations and testimony demonstrate that Defendant published videos and images of her "unclothed or exposed" and "engaging in sexual conduct" taken when Plaintiff had a "reasonable expectation" that such videos and images would remain private.  *Id.* at § 52-b(1)(a), (b)(i)-(ii).  She establishes that Defendant uploaded thirty-one sexually explicit videos and images of her on his public WhatsApp feed—accessible to others including anyone in his contact list—at least twenty-five of those videos and images depicting her uncovered genitals, anus, or nipple.  As noted above, twenty-nine videos involved her engaging in sexually explicit conduct, while several of the videos and images make her identifiable by displaying her face and tattoo.

The circumstances that existed at the time the videos and images were taken (and thereafter) reflect Plaintiff's reasonable expectation that such videos and images would remain private.  At the time the images and videos were created, Plaintiff and Defendant were dating, and neither had shared sexually explicit content of each other publicly.  Defendant possessed the videos and images on his personal cell phone or computer; the items were not created with or kept in the possession of third parties.

Again, the evidence establishes Defendant's publication of the videos and images "for the purpose of harassing, annoying, or alarming" Plaintiff.  *Id.* at § 52-b(1).  After criminal assault charges were issued against Defendant but before publication of the videos and images, Defendant threatened to share intimate videos and images of her online.  He followed through on this threat after her decision to stop all communication with him.  Plaintiff attributes his actions to his intent to destroy her career and hurt her relationship with her family.  This is a natural inference, even without her explicitly saying so, under the circumstances—Defendant's phone calls to employers accusing her of abusing her position and distributing drugs unlawfully are consistent with such

malintent.

The same evidence establishes the lack of Plaintiff's consent.  Moreover, she testified that she never expressly consented to Defendant posting intimate videos and images of her online. Finding that Defendant violates § 52-b, I recommend awarding Plaintiff punitive damages under that law.

> b. *The undersigned recommends finding Defendant liable under New York City Administrative Code § 10-180.*

Plaintiff also seeks punitive damages under N.Y.C. Admin. Code § 10-180.  ECF 17, at ¶ 20.  That local statute provides that:

> [i]t is unlawful for a covered recipient to disclose an intimate image, without the depicted individual's consent, with the intent to cause economic, physical or substantial emotional harm to such depicted individual, where such depicted individual is or would be identifiable to another individual either from the intimate image or from the circumstances under which such image is disclosed.

N.Y.C. Admin. Code § 10-180(b)(1).  A "covered recipient" includes "an individual who gains possession of . . . an intimate image from a depicted individual, including through the recording of the intimate image."  *Id.* at § 10-180(a).  An "intimate image" of a "depicted individual" is any photo, video, or other visual image of an individual "that portrays such individual (i) with fully or partially exposed intimate body parts,[6] (ii) with another individual whose intimate body parts are exposed, . . . or (iii) engaged in sexual activity"[7] and "has been disclosed . . . in a manner in which, or to a[n] . . . audience to whom, the [] individual intended it would not be disclosed, at the time at which the covered recipient gained possession of . . . the intimate image."  *Id.*  "Disclose" means

---

[6] "Intimate body parts" include "the genitals, pubic area, or anus of any person, or the female nipple of a person who is 11 years old or older."  N.Y.C. Admin. Code § 10-180(a).

[7] Like "sexual conduct" under N.Y. Civ. Rights Law § 52-b, "sexual activity" includes the definitions under N.Y. Penal Law § 130.00(1)-(2).  *Id.*

to disseminate, or "to post, present, display, circulate, advertise, or allow[] access, electronically . . . so as to make an image or images available to the public[.]"  *Id.* (citing N.Y. Penal Law § 250.40(6)(c)).  "Consent" requires "permission that is knowingly, intelligently, and voluntarily given for the particular disclosure at issue."  *Id.* at § 10-180(a).

"Any individual who suffers harm from a violation of [§ 10-180(b)] shall have a civil cause of action . . . against the individual who violated that subdivision."  *Id.* at § 10-180(d)(1).  If the elements of § 10-180 exist to establish a violation, courts may award "compensatory and punitive damages . . . [and] attorney['s] fees[.]"  *Id.* at § 10-180(d)(2)(a), (c).

For the same reasons noted above, I recommend finding that Defendant's actions violate § 10-180.  Defendant is a covered recipient under the statute, having possessed the videos and images of Plaintiff on his personal cell phone or computer and uploaded them on his public WhatsApp feed.  I have, twice already, addressed how the images and videos are "intimate" under similarly worded provisions elsewhere and render Plaintiff "identifiable" to anyone accessing Defendant's publicly viewable WhatsApp feed.  Indeed, Plaintiff was notified of the disclosure by someone else reaching out to her—were she not identifiable from the videos and images, she would not have been notified personally and directly by Defendant's former spouse.  Lack of consent and Defendant's intent apply with as much force here as they did with the other statutes addressed above.  Because Defendant's actions violate § 10-180, the undersigned recommends finding that Plaintiff is entitled to punitive damages under the same.

> c.  *The undersigned recommends finding that Defendant's actions satisfy the elements of IIED.*

Plaintiff seeks punitive damages under state tort law because Defendant's actions satisfy the elements of IIED.  Compl. at ¶ 269-79; ECF 30.  Under New York law, if the elements of IIED are satisfied, courts may award punitive damages.  *Cowan v. City of Mount Vernon*, 95 F. Supp.

3d 624, 658 (S.D.N.Y. 2015); *see Pepe v. Maklansky*, 67 F. Supp. 2d 186, 188 (S.D.N.Y. 1999) ("Punitive damages have 'been awarded and upheld in cases involving intentional torts[.]'" (quoting *Laurie Marie M. v. Jeffrey T.M.*, 559 N.Y.S.2d 336, 340 (N.Y. App. Div. 1990))).  To prove IIED, a plaintiff must allege: "(1) extreme and outrageous conduct, measured by the reasonable bounds of decency tolerated by society; (2) intent to cause or disregard of a substantial probability of causing severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress."  *Margrabe*, 353 F. App'x at 550.  The extreme and outrageous conduct must "be regarded as atrocious and intolerable in a civilized society." *Freihofer*, 480 N.E.2d at 355; *accord Lish*, 807 F. Supp. at 1109.

New York courts find that public disclosures, or threats of public disclosure, of sexually explicit videos or images of a person without their consent constitute extreme and outrageous conduct.  *See, e.g.*, *Doe v. Doe*, No. 16-0332-NSR, 2017 WL 3025885, at *6 (S.D.N.Y. July 14, 2017); *Waterbury*, 168 N.Y.S.3d at 426; *Dana v. Oak Park Marina, Inc.*, 660 N.Y.S.2d 906, 910 (N.Y. App. Div. 1997); *Villalta v. JS Barkats, P.L.L.C.*, No. 16-2772-RA-RWL, 2021 WL 2458699, at *15 (S.D.N.Y. Apr. 16, 2021); *Roelcke v. Zip Aviation, LCC*, No. 15-6284-DAB, 2018 WL 1792374, at *13 (S.D.N.Y. Mar. 26, 2018).

I recommend finding that Plaintiff establishes Defendant's liability under IIED.  First, Defendant's actions reflect extreme and outrageous conduct.  Like defendants in *Doe, Waterbury*, and *Dana*, Defendant possessed the videos and images on his personal cell phone or computer and uploaded them on his public WhatsApp feed without Plaintiff's consent.  The videos and images were "publicly viewable or, at a minimum, viewable to those who have Defendant in their contact list or with whom Defendant had previously communicated using WhatsApp."  Compl. at ¶ 68. Plaintiff testified that the videos and images remained on Defendant's public WhatsApp feed for

at least three days, long enough for a mutual acquaintance—Defendant's former spouse—to alert her to the presence of the revenge porn.

Like in *Villalta* and *Roelcke*, Defendant threatened to share intimate views and images of Plaintiff online and followed through on such threats.  This behavior, paired with Defendant making false reports about Plaintiff to her employers and filing false complaints about Plaintiff with the New York State licensing board, is extreme and outrageous.

Defendant acted with the "intent to cause or disregard of a substantial probability of causing severe emotional distress[.]"  *Margrabe*, 353 F. App'x at 550.  Plaintiff establishes that Defendant was motivated by his intent to destroy her career and hurt her relationship with her family.  His threats to publish such material, his publishing the material after she cut off communication with him, and his reaching out to employers to lodge false accusations (which endangered her professional license) all reflect intent to harass and harm her through, among other means, severe emotional distress.  The nonconsensual nature of the activity also favors Plaintiff on this element.  *See Doe*, 2017 WL 3025885, at *6 (finding that the second element of IIED was satisfied where the "[d]efendant's failure to obtain [the p]laintiff's consent to . . . post[] th[e] recording [of their sexual activity] on a public website show[ed] his disregard of a substantial probability of causing[] severe emotional distress").

Plaintiff demonstrates her severe emotional distress.  In *Doe,* the Southern District of New York found the third and fourth elements of an IIED claim established without medical evidence of the plaintiff's alleged injuries where she alleged "that the public exposure of her private sexual behavior [by the defendant] caused her to develop depression, humiliation, and anxiety, among other ailments."  2017 WL 3025885, at *7.  Public disclosure of sexually explicit content depicting the plaintiff was "of the type that guarantees an 'especial likelihood of genuine and serious mental

23

distress' on the part of [the p]laintiff sufficient to overcome the need for medical corroboration."
*Id.* (quoting *Johnson v. State of N.Y.*, 334 N.E.2d 590, 592 (N.Y. 1975)); *see Hering v. Lighthouse
2001, LLC*, 799 N.Y.S.2d 825, 827 (N.Y. App. Div. 2005) ("[S]pecial circumstances . . . [may]
arise [where] 'an especial likelihood of genuine and serious mental distress . . . [would serve] as a
guarantee that the claim is not spurious' and," the need for medical proof of causation and severe
emotional distress is abandoned. (quoting *Johnson*, 334 N.E.2d at 592)).  The plaintiff's alleged
injuries were "logically attributable to [the d]efendant's abhorrent conduct, even absent medical
corroboration of such a connection[,]" and she established the third and fourth elements of her
IIED claim.  *Doe*, 2017 WL 3025885, at *8.

        Here, like in *Doe*, Defendant's actions are "of the type that guarantees an 'especial
likelihood of genuine and serious mental distress' on the part of Plaintiff sufficient to overcome
the need for medical corroboration."  2017 WL 3025885, at *7 (quoting *Johnson*, 334 N.E.2d at
592).  Plaintiff—without medical evidence of her alleged injuries—testified that Defendant's
actions caused her severe emotional distress.  She testified that, after public disclosure of the videos
and images, she saw a psychiatrist more often and was prescribed anti-depressants.  She spoke
about enduring humiliation by the idea that the videos and images were available to the public and
that their existence and accessibility would tarnish her reputation, both personal and professional.
Plaintiff highlighted her personal and emotional agony of being terminated by her employer, being
subject to investigations conducted by her employer and the New York State nursing licensing
board, having trouble with finding a new job, and having to incur attorney's fees for past
investigations and her ongoing wrongful termination case.  Her emotional distress is both severe
and "logically attributable to Defendant's abhorrent conduct."  *Doe*, 2017 WL 3025885, at *8.

> d. *The undersigned recommends finding that Plaintiff's request for $150,000 in punitive damages is appropriate based on Defendant's conduct and the liquidated damages already awarded.*

Having found Plaintiff entitled to punitive damages under N.Y. Civ. Rights Law § 52-b, N.Y.C. Admin. Code § 10-180, and state tort law, I address her demand of $150,000 in punitive damages. ECF 30. Under New York law, courts have broad discretion in determining the amount of punitive damages to award. *Payne v. Jones*, 711 F.3d 85, 93 (2d Cir. 2013); *Lee v. Edwards*, 101 F.3d 805, 808 (2d Cir. 1996). Because the purpose of punitive damages is "to punish the defendant and [] deter him and others from similar conduct in the future[,]" courts must "make certain that [] punitive damages are reasonable in their amount and rational in light of their purpose to punish what has occurred and to deter its repetition." *Vasbinder v. Scott*, 976 F.2d 118, 121 (2d Cir. 1992) (internal citation omitted). To determine whether a particular amount of punitive damages is excessive, courts use the "three guideposts . . .: (1) the degree of reprehensibility of the tortious conduct; (2) the ratio of punitive damages to compensatory damages; and (3) the difference between this remedy and the civil penalties authorized or imposed in comparable cases." *Lee*, 101 F.3d at 809 (citing *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 575 (1996)). "In assessing the reprehensibility of a defendant's conduct, . . . courts should consider[] whether: . . . the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; . . . the conduct involved repeated actions[;] . . . and the harm was the result of intentional malice[.]" *Thomas v. iStar Fin., Inc.*, 652 F.3d 141, 148 (2d Cir. 2011) (internal citation omitted). Courts also compare the punitive damages awarded "on the same question in other cases" to determine whether a particular award is excessive. *Payne*, 711 F.3d at 104.

I recommend finding that Plaintiff's request for $150,000 in punitive damages is appropriate and not excessive. Several times I have described how Defendant's actions are

reprehensible.  They involved "a reckless disregard of the health or safety of others[,]" "repeated actions[,]" and "intentional malice."  *Thomas*, 652 F.3d at 148.  The outrage and malice I attached to those actions earlier are equally relevant to this analysis.  Also, Plaintiff's punitive damages request is less than a recent award in a New York trial court for violations of the same state and local statutes.  *See J.M. v. Rozanov*, No. 811336, 2024 WL 1903277, at *6-7 (N.Y. App. Div. Apr. 19, 2024) (awarding $2.5 million in punitive damages).  Plaintiff's request for $150,000 in punitive damages is not excessive.  Therefore, I recommend GRANTING Plaintiff's request for $150,000 in punitive damages.

### iii.    *The undersigned recommends DENYING Plaintiff's request for attorney's fees.*

Plaintiff seeks attorney's fees based on Defendant's violations of the federal, state, and local statutes discussed above.  ECF 30.  Under New York law, a prevailing party is not entitled to an award of attorney's fees "unless authorized by agreement between the parties, statute, or court rule."  *Oscar Gruss*, 337 F.3d at 199.  Even if attorney's fees are authorized, "[t]he fee applicant must submit adequate documentation supporting the requested attorney['s] fees[,]" *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 600 (2d Cir. 2020), so that the court can "determine whether the fee is reasonable[,]" *J&J Sports Prods., Inc. v. Meson de Colombia, Inc.*, No. 10-1142, 2010 WL 4791771, at *3 (E.D.N.Y. Oct. 7, 2010).  Normally, "[a]ll applications for attorney's fees . . . should be [] disallowed unless accompanied by contemporaneous time records indicating, for each attorney, the date, the hours expended, and the nature of the work done."  *Carey*, 711 F.2d at 1154; *see also* S.D.N.Y. Loc. Civ. R. 55.2(c) (requiring "a statement of damages . . . showing the . . . basis for each element of damages, including . . . attorney's fees").[8]

---

[8] This is the same information required by the Local Rules of the Court.  *See* D. Md. Loc. R. 109.2(b).

Plaintiff has not submitted adequate documentation reflecting her attorney's fees in conjunction with filing and litigating this matter in the Southern District of New York before transfer to this Court. That ends the matter, especially considering my instruction at the evidentiary hearing that Plaintiff could submit evidence of fees and costs for consideration. *See Jianhui Hu v. 226 Wild Ginger*, No. 17-10161-JGK, 2020 WL 4383501, at *4 (S.D.N.Y. July 31, 2020) (refusing to award attorney's fees where the plaintiffs failed to provide evidence to support their request for attorney's fees even after the court informed them to present such evidence at the evidentiary hearing); *USHA Holdings, LLC v. Franchise India Holdings, Ltd.*, No. 12-3492, 2015 WL 13741743, at *16 (E.D.N.Y. Sept. 11, 2015) (refusing to award attorney's fees where the plaintiffs failed to provide "any support for their request for attorney's fees" even after "the [c]ourt indicated at the [evidentiary] hearing that [they could] submit supplemental papers in support of their request"); *Shamir v. Anchor-Int'l Found., Inc.*, No. 10-725-PGG, 2013 WL 4008635, at *13-14 (S.D.N.Y. July 30, 2013) (refusing to award attorney's fees where the plaintiff failed to provide evidence to support their request for attorney's fees at the evidentiary hearing and after he "was given an opportunity to supplement his initial submission"). Although Plaintiff is statutorily entitled to an award of attorney's fees under the federal and state statutes cited in the Complaint, she does not support her demand with evidence I may use to determine an appropriate amount. I am left with only a general assertion that she incurred *some* amount in fees. *See* ECF 30 (noting that "[Mr. Szalkiewicz] has [] provided me with a declaration and bill for his services" but failing to produce such declaration and bill). This is insufficient. Therefore, I recommend DENYING Plaintiff's Motion to the extent it seeks attorney's fees.

## V.    CONCLUSION

For the foregoing reasons, the undersigned recommends GRANTING in part and DENYING in part Plaintiff's Motion for Default Judgment. The undersigned recommends

GRANTING Plaintiff's Motion (1) for relief under 15 U.S.C. § 6851 and awarding $150,000 in liquidated damages and (2) for relief under N.Y. Civ. Rights Law § 52-b(2), N.Y.C. Admin. Code § 10-180(d)(2)(c), and intentional infliction of emotional distress under New York law and awarding $150,000 in punitive damages.  Further, the undersigned recommends DENYING Plaintiff's Motion to the extent it seeks attorney's fees and any relief pursuant to other common law torts.

Any objections to this Report and Recommendation must be served and filed within fourteen (14) days, pursuant to Federal Rule of Civil Procedure 72(b) and Local Rule 301.5(b).

Date: November 8, 2024

_____/s/_____
Charles D. Austin
United States Magistrate Judge